UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

TOMMY LYNN SUTHERLAND,    )
                          )
      Plaintiff          )
                          )
  vs.                     )  Case No.  6:15-cv-00239-HGD
                          )
COMMISSIONER, SOCIAL SECURITY  )
ADMINISTRATION,           )
                          )
      Defendant          )

## MEMORANDUM OPINION

Plaintiff, Tommy Lynn Sutherland, filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning May 23, 2011.  His claim was initially denied and he filed a request for a hearing before an Administrative Law Judge (ALJ).  That hearing was held on May 7,2014.  Plaintiff was represented by counsel.  On September 26, 2014, ALJ Patrick R. Digby denied plaintiff benefits finding that he was "not disabled" under the Social Security Act. (Tr. 8, 11).  The Appeals Council denied plaintiff's request for review on December 17, 2014.  (Tr. 1).  Therefore, this case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

**I.      ALJ Decision**

Disability under the Social Security Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). "Substantial work activity" is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines

whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

Following this five-step procedure, the ALJ found that plaintiff has the following severe impairments: post open reduction of cervical fracture C3-7, posterior fusion and status post C5 corpectomy, C4-6 fusion, anxiety, depression and bipolar disorder. (Tr. 13). The ALJ also found that plaintiff's condition did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1520(d), 404.1525. 404.1526, 416.920(d), 416.925 and 416.926. (Tr 13-14). The ALJ further found, based on the

entire record, that plaintiff has the RFC to perform a modified range of light work.

(Tr. 18-19). Specifically, the ALJ found:

> [T]he claimant can occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. The claimant is able to sit for 6 hours in an 8 hour workday with all customary breaks. The claimant can stand and/or walk for six hours in an eight-hour workday with all customary work breaks. The claimant has no [limitations] in the upper and lower extremity for push/pull or use of foot controls up to the twenty/ten pound lifting restriction. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant cannot work on ladders, ropes, or scaffolds. The claimant should not work around dangerous machinery or unprotected heights. The claimant can frequently reach overhead bilaterally. The claimant is able to learn and remember simple work and routines with practice. He is able to understand and remember simple instructions but not detailed. He is able to carry out simple instructions and sustain attention to simple, routine, and familiar tasks for an eight-hour workday at two-hour increments with all customary work breaks. The claimant would work best with casual or occasional supervision and occasional prompts to move from one sequential stage to the next. He would function best with his own work area/station without close proximity with others. He can tolerate ordinary work pressures, but should avoid excessive workloads, quick decision making, rapid changes and multiple demands. The claimant would benefit from regular rest breaks and a slowed pace, but would still be able to maintain a work pace consistent with the demands of competitive level of work. Any contact with the public should be casual or occasional, non-intensive. Any feedback should be supportive, tactful, and non-confrontational. Contact with coworkers should be casual or occasional. He can adapt to infrequent, well-explained changes. He may need help with planning and goal setting.

(Tr. 18-19). The ALJ found that plaintiff could not perform any past relevant work. However, utilizing the testimony of a vocational expert (VE), the ALJ determined that

there were jobs in the state and national economy that plaintiff could perform. Therefore, he concluded that plaintiff was not disabled under the Social Security Act. (Tr. 26).

## II.    Plaintiff's Argument for Reversal

Plaintiff asserts that the ALJ failed to properly apply the Eleventh Circuit Pain Standard in determining whether plaintiff was disabled because he failed to properly consider the effects of an accident suffered after his application was filed but about two months before his hearing before the ALJ wherein he suffered a broken neck. (Doc. 13, Plaintiff's Brief, at 12-15).

## III.    Standard of Review

Judicial review is limited to whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the

final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## IV.  Discussion

Plaintiff was born in 1967 and was 46 years old at the time of his hearing. He completed the eighth grade. (Tr. 36-37). For the last 20 years, he has been either helping drive a truck or driving a truck. (Tr. 37). He suffered an on-the-job injury for which he was awarded workmen's compensation benefits. According to plaintiff, when he was injured the first time, he received medical treatment that resulted in the fusion of three levels of his neck. Plaintiff states that he has been on pain management ever since and has not been released to go to work. (Tr. 45). He also

claims that, as a result of this injury, he lost his commercial driver's license (CDL) because he could not pass the physical examination. (Tr. 57). He also testified that he was injured in a second fall about two months before his hearing before the ALJ and had further neck surgery. He testified that he was seeing Dr. Fernitti, a pain clinic doctor, and Dr. Daniel Harmon for his second injury. (Tr. 56).

In reaching his determination that plaintiff was not disabled, the ALJ reviewed medical records submitted on plaintiff's behalf. The ALJ discussed plaintiff's treatment at Southern Orthopedic and Sports Medicine Associates, P.C., after his May 2011 injury. Dr. Jeffrey S. Cuomo, M.D., noted that plaintiff had mixed signal protrusion of disc and spur at C3-4, C4-5 and C5-6. (Tr. 233). Plaintiff was referred to Dr. Mark Prevost, M.D., who recommended that plaintiff undergo a three-level anterior cervical diskectomy fusion. (Tr. 231). After undergoing this procedure, descriptions of the fusion by Dr. Prevost ranged from "not a great fusion" (Tr. 227) to "beautiful." (Tr. 225, 226, 228, 229). Nonetheless, plaintiff continued to complain about pain. Dr. Prevost sent plaintiff for a functional capacity examination which found that he had a permanent impairment as a result of the fusion which was 45% to his body as a whole. He recommended that plaintiff undergo pain management. (Tr. 225).

Plaintiff continued to complain about chronic pain throughout 2012, 2013 and into 2014 when he was seen at the Winston County Medical Clinic. (Tr. 255, 266-69, 277, 284, 290, 335, 342, 345, 348, 351-52). In September and October 2013, he rated the pain as 7 on a 1-10 scale. (Tr. 335, 342).

After filing for disability benefits, but before his hearing before the ALJ, plaintiff, on or about March 13, 2014, further injured his neck in a fall in his home. (Tr. 300). Examination by Dr. Kamal Ahuja, M.D., reflected that plaintiff suffered anterior displacement of the C6 vertebral body on C7 as a result of a fracture along the inferior aspect of C6, which is itself at the inferior aspect of his previous C3-C6 fusion. According to Dr. Ahuja, this injury involved the pedicle and laminar region. He stated that the C5 facets were jumped and looked anterior to C6 facets. He also noted that there was central canal compromise present and spinal cord injury was likely. Plaintiff was sent for Halo placement and traction for closed reduction of his fracture. It was noted that he would need surgery. (Tr. 302-03).

Surgery was performed on plaintiff resulting in both posterior and anterior fixation of the fracture area. (Tr. 308). For a couple of days after this surgery, it was noted that plaintiff tried to hit an R.N., kicked the bed rails and swung his arms around. He was also described as "very confused and unable to communicate." Records reflect that plaintiff was heavily sedated at this time with morphine

injections, hydromorphone and oxycodone. After a few days, plaintiff became much more cooperative. (Tr. 311-330).

However, after his release from the hospital, plaintiff continued to experience pain. He testified that his pain is now regularly a 9 on a scale of 1-to-10. (Tr. 46, 47). He testified that he is taking pain medication every day and, in spite of this he still hurts and his hands are numb with tingling extending all the way up to his neck. (Tr. 46). He also testified that he has difficulty gripping things and that it is hard for him to eat. He has to have help taking a bath or a shower and consequently sometimes goes two weeks without a bath. (Tr. 50).

The ALJ reached his determination regarding plaintiff's lack of disability based on physical examinations, consultative examinations, a functional capacity examination, plaintiff's activities of daily living and other evidence which was almost exclusively limited to his condition before the second accident. There are only two short references to this accident despite the fact that it was clearly a very serious event. In the first, the ALJ states that notes on March 20, 2014, give plaintiff's prognosis as "excellent." However, this is only one week after the accident and less than that since the surgery was performed which repaired the neck fracture. The ALJ also states that "[i]nterestingly, although the claimant complains of severe body pain, he exhibited no limitations at the hospital as he kicked the bed rails and swung his

arms." (Tr. 22). Given the fact that these incidents occurred within a day or so after his surgery while he was heavily drugged with hydromorphone, morphine injections and hydrocodone, these actions are hardly evidence that plaintiff did not suffer debilitating and painful damage as a result of the second accident.

The second mention of the March 2014 accident by the ALJ refers to it as "additional surgery." The ALJ again notes that plaintiff's prognosis shortly after surgery was "excellent," but this time without also noting that the prognosis occurred immediately after the surgery and before the injury had any time to heal. (Tr. 24). The ALJ also stated that "[t]here is no indication and no evidence that such additional surgery will last for twelve months or that his limitations are more than those opined [by] the examining sources and Dr. Estock in his residual functional capacity." (Tr. 24). However, this is simply not correct. Plaintiff testified that he suffered pain continuously since his first injury in 2011, up to a 7 on a scale of 1-to-10. After the second accident, he testified that he continues to suffer pain, now a 9 on the 1-to-10 scale. If the ALJ had questions regarding whether the effects of this accident would last more than 12 months, he could have required plaintiff to undergo further examination by a consultative expert.

The ALJ also rejected plaintiff's claim of disabling symptoms in part due to his failure to seek medical care for significant periods. This also is not borne out by the

evidence. There are records of repeated visits to doctors by plaintiff after his 2011 accident, cited above, most involving complaints of neck pain. Likewise, the ALJ stated that plaintiff still retains a commercial driver's license and drives. Plaintiff testified that he lost his CDL because he could not pass the physical. He also states that he cannot drive anymore and only drove one time after the 2014 accident. That one occasion caused him to get "in trouble" for which he has to "go to court." (Tr. 52).

In addition, the ALJ stated that plaintiff was not compliant with all medical advice in that he was advised in June 2013 to seek pain management, but did not do so. (Tr. 225). However, records from the Winston County Medical Clinic in the following month of August 2013 reflect that plaintiff was taking pain medication for chronic pain which was helpful in reducing the level of his pain. (Tr. 290). The ALJ also asserted that plaintiff was not taking pain medication in 2013 when he had treatment at the Winston County Medical Clinic. (Tr. 20). This claim is misleading, at best. The records from the Winston County Medical Clinic (Ex. 5F) reflect that plaintiff was repeatedly prescribed Flexeril and Percocet for pain. On one occasion, June 13, 2013, the record states that plaintiff was "not taking any meds at this time." However, it is unclear from this one sentence whether that meant he simply did not take any medication before his doctor's visit on that day, or was not taking them at

all. However, it appears that it was the former, rather than the latter, given that the very same medical record reflects that plaintiff's current medications included both Flexeril and Percocet. (Tr. 284).

When a claimant attempts to establish disability through his own testimony about his subjective symptoms, a three-part "pain standard" applies. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The pain standard requires: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Id.* If the ALJ determined that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms, then the ALJ evaluates the extent to which the intensity and persistence of those symptoms limit his ability to work. 20 C.F.R. § 404.1529(b). At this stage, the ALJ considers the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and non-treating physicians, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id.* § 404.1529(a).

A claimant's testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d

1553, 1561 (11th Cir. 1995). If the ALJ decides not to credit a claimant's testimony about his symptoms, the ALJ "must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective pain testimony requires . . . that the testimony be accepted as true." *Id.* at 1561-62.

The second accident occurred after plaintiff applied for disability based on his first accident and broken neck, but before the hearing before the ALJ. In fact, the hearing before the ALJ was less than two months after plaintiff suffered his second broken neck. The ALJ failed to properly apply the pain standard by considering the effects of plaintiff's 2014 accident on his functional abilities. For instance, the Function Report, which reflected that he had no problems independently handling his personal care needs, was completed on August 19, 2013, well before the second accident, and it is contradicted by plaintiff's testimony regarding his post-second accident abilities. As noted above, the ALJ also based his determination on alleged facts that are not supported by the evidence.

According to *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253 (11th Cir. 2007):

> With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process. *See* 20 C.F.R. § 404.900(b). The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if "the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Id.* § 404.970(b). The claimant may seek review in a federal court of "any final decision

of the Commissioner of Social Security," 42 U.S.C. § 405(g), only after exhausting these administrative remedies. *See Sims v. Apfel*, 530 U.S. 103, 107, 120 S.Ct. 2080, 2083, 147 L.Ed.2d 80 (2000) (claimant must appeal to Appeals Council to exhaust remedies).

> Section 405(g) permits a district court to remand an application for benefits to the Commissioner, who was denominated "the Secretary" in the original statute, by two methods, which are commonly denominated "sentence four remands" and "sentence six remands," each of which remedies a separate problem. The fourth sentence of section 405(g) provides the federal court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The sixth sentence of section 405(g) provides a federal court the power to remand the application for benefits to the Commissioner for the taking of additional evidence upon a showing "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."
>
> When a case is remanded, "the Appeals Council, acting on behalf of the Commissioner, may make a decision, or it may remand the case to an administrative law judge with instructions to take action and issue a decision or return the case to the Appeals Council with a recommended decision." 20 C.F.R. § 404.983. If the case is remanded by the Appeals Council to the administrative law judge, the process starts over again. *Id.* § 404.984. If the case is decided by the Appeals Council, then that decision is subject to judicial review. *Id.*

*Id.* at 1261.

In this case, the Court believes that the new evidence regarding plaintiff's second accident needs to be considered by the Commissioner, including appropriate application of the pain standard and correct application of the actual facts to the determination of disability. Because the accident occurred so near in time to the

actual hearing by the ALJ, there was insufficient time to make a determination of whether the healing process was sufficient to render plaintiff not disabled. Based on this, the Court finds that there is new evidence which is material and good cause for the failure to incorporate such evidence into the record in a prior proceeding. Further medical or other appropriate examination may be necessary to allow the ALJ to render a valid determination.

V.  **Conclusion**

Based on the foregoing, the determination of the ALJ was not based on substantial evidence. The Court further finds that remand to the Commissioner is appropriate under sentence four of § 405(g) in order to obtain further medical opinions or information and to take further testimony regarding any effect the plaintiff's March 2014 accident may have had on his claim for disability benefits. Therefore, the decision of the Commissioner is due to be REVERSED and REMANDED as directed. A separate order will be entered.

DONE this 12th day of May, 2016.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE